**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SYLVIA ELMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09 C 7158 |
| | ) | |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| NORTHWEST COMMUNITY HOSPITAL, | ) ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Sylvia Elmore brings this *pro se* civil action against Northwest Community Hospital ("NCH") alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Before the court is NCH's motion for summary judgment under Federal Rule of Civil Procedure 56(c). For the reasons stated below, the motion is granted.[1]

**LEGAL STANDARD**

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c) & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the nonmoving party cannot rest on mere pleadings alone but must use

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact is one that might affect the outcome of the suit. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## **BACKGROUND**[2]

NCH is a non-profit acute care hospital in Arlington, Illinois. Elmore, who is African-American, started working at NCH in November 2001 when she was placed in a temporary claims credit project specialist position through a staffing agency. This position was part of the special projects division of NCH's patient financial services department. Elmore reported to Lisa Macholl, the manager the special projects division, who reported to James Swanson, the director of the patient financial services department. As a claims specialist, Elmore reviewed and reconciled patient account files. This required that she contact patients and third-party payers on the phone and in writing to resolve account discrepancies and disputes. Prior to her employment with NCH, Elmore had worked in account collections at Cellular One, Ameritech Cellular, and the Household Finance Company. Elmore had received an award from the Household Finance Company for being the top mortgage collector of the month.

---

2 Local Rule 56.1 requires the nonmoving party to file a response to the movant's statement of facts and a supporting memorandum of law. *See* L.R. 56.1(b). As discussed *infra,* Elmore has done neither. Because she did not comply with Local Rule 56.1, all material facts set forth in NCH's statement are deemed admitted to the extent supported by the record. *See* L.R. 56.1(b)(3)(C).

In June 2002, Elmore reported to Macholl that one of her co-workers, Jan France, had uttered discriminatory comments that offended her. France told Elmore that "[her] people did not need an education; all they need [is] a job." Elmore understood France's statement to mean that "blacks did not need an education." Macholl issued a written reprimand to France and France subsequently apologized to Elmore. In September 2002, Elmore accepted a permanent position at NCH as a claims specialist. After the incident with France, no other employees at NCH made offensive comments to Elmore that she understood to be racially motivated.

A.  **Work Performance**

Between 2002 and 2007, Elmore's performance reviews consistently stated that she needed to improve her attendance at work. In her 2002-2003 annual performance review, Elmore received an overall rating of "Meets all Expectations" but a rating of "Opportunity for Improvement" for the category "[b]egins work as scheduled and remains focused on job responsibilities." "Opportunity for improvement" means that an employee's performance "meets most but not all expectations for the position." Her performance review also stated that Elmore "had some attendance issues over the past year."

In her 2003-2004 performance review, Elmore again received a rating of "Opportunity for Improvement" for the category "[b]egins work as scheduled and remains focused on job responsibilities." Her review stated that Elmore had "received coaching related to attendance issues which negatively impacted the productivity of the Credit/Project Team."

Elmore's 2004-2005 and 2005-2006 performance evaluations gave her an overall rating of "Opportunity for Improvement" because of her repeated absenteeism. Elmore's 2004-2005 review stated that Elmore had often been "excluded from time sensitive projects due to her inability to adhere to her scheduled hours, which has negatively impacted the productivity of the

Credit/Project Team." Her 2005-2006 review stated that her absences "continue to interfere with her ability to maintain her productivity at an acceptable level and diminish her overall performance."

Because of her poor attendance, Elmore was suspended from work for one day on July 25, 2006. On October 17, 2006, Macholl gave Elmore a performance action plan that outlined NCH's expectations regarding work attendance.

### B. Reassignment to the Self Pay Adjudicator Position

In early April 2007, Elmore was reassigned to a self pay adjudicator position in the customer service division. This position primarily required that Elmore make collection calls on delinquent patient accounts. Macholl told Elmore about the reassignment, explaining that it was a temporary assignment of "indefinite duration" and that Swanson had made the decision to temporarily transfer Elmore. Macholl said that the special projects division had previously "lent out" another employee to a different division in 2006. Macholl also told Elmore that she and Swanson wanted her to move to the customer service division, rather than make collection calls from her desk in the special projects division, because they wanted other collection representatives to "hear how [Elmore] sounded on the phone." Elmore later asked Swanson about the reassignment. Consistent with Macholl's explanation, Swanson stated he that "had heard how [she] sounded on the phone and he . . . liked the fact that . . . [she] sounded very nice over the phone and that he thought [she] was aggressive on the phones."

Both Macholl and Swanson told Elmore that the reassignment was necessary for "job retention and security." Although it appears that neither explained the reason for this comment to Elmore at the time, in the course of this litigation Swanson has testified that he that knew that NCH might require "head count reductions" in the special projects division and he believed that

4

Elmore might have greater job security if she was working in the customer service division. Swanson also thought that Elmore would do well in the new position because of her prior collections experience. Elmore's wage rate and benefits stayed the same when she was assigned to the new position.

Prior to Elmore's reassignment, Swanson had discussed the collections position with Theresa Dondzik and Diane Reh, two Caucasian employees in the financial services department. Dondzik worked as a claims adjudicator in the department and Reh worked in posting. When Swanson spoke with Dondzik and Reh, he mentioned that there was a possibility that one of them would be assigned to the customer service department. Swanson did not assign either Dondzik or Reh to the position, however. Elmore filed a complaint with the EEOC on April 9, 2007, claiming that NCH discriminated against her on the basis of her race by assigning her to the self pay adjudicator position in the customer service department.

### C. Termination and Initiation of the Present Action

Elmore did not report to work from May 8, 2007 through May 15, 2007. She later informed NCH that she intended to request leave under the Family and Medical Leave Act ("FMLA") for her unscheduled absences in May of 2007. On May 15, NCH sent a letter to Elmore requesting that she submit any FMLA forms by May 31, 2007. Elmore never submitted the forms or a required physician certification. Instead, on July 10, 2007 she called in sick and informed NCH that she would not return to work until July 24, 2007. NCH sent another letter requesting documentation on July 12, 2007. Elmore did not submit any documentation or return to work after July 10, 1007. On July 24, 2007, Elmore was fired because of her numerous undocumented and unexcused absences. She did not appeal her discharge. Subsequent to

Elmore's termination, the special projects division was disbanded and the employees who were in that division were transferred to other divisions in the patient financial services department.

Elmore received her right to sue letter from the EEOC in August 14, 2009. On November 13, 2009, she filed a two-count complaint alleging race discrimination and retaliation in violation of Title VII. The court dismissed Elmore's retaliation claim on July 14, 2010. *See* Dkt. #28.

## DISCUSSION

**I.     Compliance with Local Rule 56.1**

Before reaching the merits of NCH's motion for summary judgment, the court must address the adequacy of Elmore's response. Local Rule 56.1(a) requires the party seeking summary judgment to submit, among other things, a statement of material facts. The statement of material facts should consist of short, numbered paragraphs and specific references within each paragraph to the affidavits, parts of the record, and other admissible evidence relied on to support the facts set forth in each paragraph. L.R. 56.1(a)(3). Significant to the court's analysis here, the non-moving party must submit a concise response to the movant's statement of facts. L.R. 56.1(b)(3)(B). "Local Rule 56.1's enforcement provision provides that when a responding party's statement fails to controvert the facts as set forth in the moving party's statement in a manner dictated by the rule, those facts shall be deemed admitted for purposes of the motion." *Smith* v. *Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). This rule applies even where the non-moving party is representing herself *pro se*. *Id.* ("A district court is not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'" (quoting *Bordelon* v. *Chicago Sch. Reform Bd. of Trustee,* 233 F.3d 524, 529 (7th Cir. 2000))).

Although Elmore was served with notice of these requirements in accordance with Local Rule 56.2, she has not submitted any of the required materials. Elmore's response to NCH's summary judgment includes many irrelevant facts, statements that are not supported by citations to the record, and new allegations of discrimination without citation to the record. In accordance with Local Rule 56.1(b)(3)(C), the court deems NCH's statement of material facts admitted and has not taken Elmore's unsupported factual assertions into consideration. *See Smith,* 321 F.3d at 682-83 (district court properly deemed moving party's statement of material facts admitted where *pro se* plaintiff "failed in his obligation to support controverted or additional facts with citations to admissible evidence"); *Wilson* v. *Kautex, Inc.,* 371 F. App'x 663, 664 (7th Cir. 2010) (strictly enforcing Local Rule 56.1 was "well within the district court's discretion" even though plaintiff in Title VII case was a *pro se* litigant) (citing *Patterson* v. *Ind. Newspapers, Inc.,* 589 F.3d 357, 359-60 (7th Cir. 2009)). Included in the background section of this opinion are only those facts from NCH's Local Rule 56.1 statement that have been appropriately presented, supported, and are relevant to the resolution of this motion.[3] Elmore's failure to respond does not automatically result in judgment for NCH, however; the court must still

---

3 Elmore has filed a document titled "Objection to Defendant Northwest Community Citation" in which she argues that "[w]hatever exhibits NCH is disputing should be admissible in Plaintiff's opposing motion to defendant's summary judgment and any exhibits presented in Plaintiff's deposition should be considered inadmissible along with Plaintiff's deposition." *See* Dkt. #44. In support, Elmore asserts that Macholl was present during her deposition and that her former counsel did not tell her that she could object to Macholl's presence. The court will construe Elmore's filing as a motion to strike her deposition testimony and will consider the merits of her motion, despite the fact that it was filed seven days after briefing had closed. *See Al Amin* v. *Wondolowski*, No. 09 C 2212, 2010 WL 2197662, at *1 (N.D. Ill. June 2, 2010) (noting that "*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed" (quoting *Boxer* v. *Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006))). Elmore's motion must be denied because any objection to Macholl's presence has been waived. *See* Fed. R. Civ. P. 32(d)(3)(B). Moreover, the Federal Rules of Civil Procedure did not prohibit another witness in this case, such as Macholl, from attending her deposition. *See* Fed. R. Civ. P. 30(c), advisory committee's notes ("[O]ther witnesses are not automatically excluded from a deposition simply by the request of a party."). Although a witness may be excluded from a deposition "for good cause," Elmore's former counsel did not file a motion for a protective order that would have excluded Macholl from the deposition. *See* Fed. R. Civ. P. 26(c).

determine whether NCH is entitled to judgment as a matter of law.  *See Raymond* v. *Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

II.     **Elmore's Discrimination Claim**

A.      **Claims Relating to Poor Performance Reviews, Suspension, and a Hostile Work Environment Are Beyond the Scope of Elmore's EEOC Charge**

At the outset, the court will briefly address the scope of the issues that can properly be considered in ruling on NCH's motion.  Elmore, in her response to NCH's motion for summary judgment, asserts that her poor performance reviews in 2005 and 2006 and her suspension in July of 2006 constituted an adverse employment action and that Macholl and Swanson's comments support a hostile work environment claim.  Elmore's precise argument is difficult to discern.  Both of these claims are, however, clearly beyond the scope of the charge that Elmore filed with the EEOC and therefore are not properly before the court.

"[A] Title VII plaintiff may bring only those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations."  *McKenzie* v. *Ill. Dep't. of Transp.,* 92 F.3d 473, 481 (7th Cir. 1996) (citing *Cheek* v. *W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994)).  This means that "the [administrative] charge and the [court] complaint must describe the same conduct and implicate the same individuals."  *Ezell* v. *Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005).  In addition, courts consider whether "the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge."  *Jones* v. *Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010) (quoting *Vela* v. *Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000)).  Elmore's EEOC charge states in full:

> I was hired by Respondent on or about September 14, 2002.  My most recent position was Claims/Credit Project Specialist.  On or about April 3, 2007, my

> position title was changed to Self Pay Adjudicator and my job duties were changed, unlike similarly situated non-Black co-workers.
>
> I believe I was discriminated against based on my race, Black, and retaliated against for making protected complaints, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Elmore's negative performance reviews and her suspension in 2006 were not contemporaneous with her reassignment in April of 2007. They were discrete employment actions that are not reasonably related to the allegations in Elmore's EEOC charge. *See Conley* v. *Vill. of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000) (claim of discriminatory suspension was not like or reasonably related to allegations regarding unpleasant job assignments, lack of overtime, and failure to promote). Any hostile work environment claim is likewise beyond the scope of the charge, which does not mention verbal harassment or other degrading treatment. *See Dandy* v. *United Parcel Service, Inc.*, 388 F.3d 263, 271 (7th Cir. 2004) (hostile work environment claim was not like or reasonably related to allegations of denial of promotion and retaliation). Because Elmore's EEOC charge does not allege that NCH discriminated against her by giving her poor performance reviews, suspending her from work, or allowing a hostile work environment, the court will not consider such claims in assessing whether Elmore has presented evidence sufficient to withstand NCH's summary judgment motion.

**B.     Claim Relating to the Self Pay Adjudicator Position**

Title VII makes it unlawful for employers to discriminate against employees because of their race. 42 U.S.C.A. §§ 2000e et seq. In alleging a Title VII violation, the employee may proceed either directly, by presenting direct and/or circumstantial evidence of discriminatory intent, or indirectly, by utilizing the burden-shifting method established by *McDonnell Douglas Corporation* v. *Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Scaife* v. *Cook*

9

*Cnty.,* 446 F.3d 735, 739 (7th Cir. 2006). Because Elmore has not presented any evidence of direct discrimination on the part of her supervisors, her Title VII claim must proceed under the *McDonnell Douglas* indirect method.

Under the *McDonnell Douglas* indirect method, a plaintiff must first make out a prima facie case by showing that "(1) she is a member of [a] protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) her employer treated similarly situated [ ] employees [not in the protected class(es)] more favorably." *Peirick* v. *Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't,* 510 F.3d 681, 687 (7th Cir. 2007) (citations omitted); *Barricks* v. *Eli Lilly & Co.,* 481 F.3d 556, 559 (7th Cir. 2007). "[O]nce the plaintiff has established a prima facie case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action." *Scaife,* 446 F.3d at 739. If the defendant provides a legitimate, nondiscriminatory reason for the employment action, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason is a pretext for unlawful discrimination. *Id.* at 739-40. "To show pretext, plaintiff must show more than defendant's decision was mistaken, ill considered, or foolish, and as long as the employer honestly believes [its stated] reasons, pretext has not been shown." *Kodl* v. *Bd. of Educ. School Dist. 45, Villa Park,* 490 F.3d 558, 562 (7th Cir. 2007).

NCH argues that Elmore has not satisfied the third prong of the *McDonnell Douglas* test because her assignment to the self pay adjudicator position did not constitute an adverse employment action. "An adverse employment action is one that significantly alters the terms and conditions of the employee's job." *Griffin* v. *Potter*, 356 F.3d 824, 829 (7th Cir. 2004). Although we may examine both quantitative and qualitative changes in the conditions of an employee's job, *Haugerud* v. *Amery School Dist.*, 259 F.3d 678, 691 (7th Cir. 2001), the action

must be "materially adverse, not merely an inconvenience." *Griffin*, 356 F.3d at 829. Examples of an adverse employment action include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Hilt-Dyson* v. *City of Chicago*, 282 F.3d 456, 465–66 (7th Cir. 2002).

Elmore's wages and benefits stayed the same after she was assigned to the customer collections position. Usually, "a lateral transfer without a loss in benefits does not constitute an adverse employment action." *Stutler* v. *Ill. Dep't of Correction*s, 263 F.3d 698, 702 (7th Cir. 2001). In addition, there is no evidence that Elmore's job responsibilities changed so substantially that the reassignment should be considered an adverse employment action. At her deposition, Elmore testified that she no longer reconciled patient accounts or reviewed patient contracts or medical procedure records in her new position. She explained that in her new position she was "supposed to make collection calls" to patients who were delinquent in paying their accounts. Given that Elmore was already doing some collections work in the claims credit project specialist position, this change in job responsibilities does not constitute the type of "dramatic downward shift in skill level" that rises to the level of an adverse employment action. *Cf. Patterson* v. *Ind. Newspapers, Inc.*, 589 F.3d 357, 365 (7th Cir. 2009) (employee's transfer from editorial writing to copy editing was adverse employment action); *Tart* v. *Ill. Power Co.*, 366 F.3d 461, 476 (7th Cir. 2004) (employees' loss of their computers, their independence, contact with customers, and their skilled job duties was adverse employment action); *Dahm* v. *Flynn*, 60 F.3d 253, 257 (7th Cir. 1994) (where personnel director previously had a leadership role and was subsequently excluded from major personnel decisions and worked primarily on processing employee reclassification requests, the change in her job responsibilities was

actionable). Elmore has not submitted any evidence to suggest that her career prospects were adversely affected by the reassignment. *Cf. Herrnreiter* v. *Chicago Housing Auth.*, 315 F.3d 742, 744 (7th Cir. 2002) (transfer without loss in pay or benefits may constitute adverse employment action where it "significantly reduces the employee's career prospects by preventing him from using the skills in which he is trained and experienced, so that the skills are likely to atrophy and his career is likely to be stunted"). Although Elmore alleges that she would have fewer promotional opportunities in the self pay adjudicator position, her statements are not supported by citation to admissible evidence and are not sufficient to defeat NCH's motion. *See O'Neal* v. *City of Chicago*, 392 F.3d 909, 912 (7th Cir. 2004) (employee's "speculation" that her chances of promotion would be negatively affected by transfer was not sufficient to defeat employer's motion for summary judgment). Finally, the fact that Elmore was displeased with her reassignment does not establish that the change in job duties constituted an adverse employment action. *See Smart* v. *Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996) ("While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action."). Based on the record before the court, Elmore's reassignment did not constitute an adverse employment action. Therefore Elmore has not met her burden of demonstrating that she has a prima facie case for discrimination, and NCH's motion for summary judgment will be granted.

## CONCLUSION

For the foregoing reasons, Northwest Community Hospital's motion for summary judgment [# 32] is granted. This case is terminated.

Dated: Aug. 5, 2011          Enter: _____
                                    JOAN HUMPHREY LEFKOW
                                    United States District Judge